## BONFIELD v. TICHENOR,
### No. 17174.

Court of Appeal of Louisiana.   Orleans.
June 12, 1939.

Hubert M. Ansley, of New Orleans, for appellant.

Chas. A. Danna, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for the specific performance of a contract for the sale of real estate and for damages which plaintiff claims he sustained as a result of the delay caused by defendant's failure to convey the information necessary for title examination and by defendant's refusal to deliver title.

From a judgment ordering him to convey title, defendant, Rolla A. Tichenor, Sr., has appealed. Since the judgment rejected the claim of plaintiff, Lewis G. Bonfield, for the damage caused by the delay, he has answered the appeal and has asked that the judgment be amended and

that, in addition to the enforcement of specific performance, he be awarded judgment for the amount of that damage.

The original petition alleges that on the 4th day of December, 1937, defendant, Tichenor, accepted in writing plaintiff's offer to buy the following described property:

"A certain lot of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any wise appertaining, situated in the Fourth District of this City, in the Square No. 485, bounded by Third, Fourth, Broad and Dorgenois Streets, designated as Lot No. 24, measuring thirty (30') feet front on Third Street by one hundred twenty-seven feet, two inches and three lines (127' 2" 3"') in depth. Said lot begins at a distance of two hundred thirty-three feet, four inches and four lines (233' 4" 4"') from the corner of Dorgenois Street."

To this petition there is attached a copy of the said offer and acceptance, which we shall hereafter refer to as the agreement. This agreement provided that the sale should be made for the price of $1,300 and contained the recital that $150 of the purchase price had been deposited and that that sum should not be considered as earnest money, but that either party should have the right to demand specific performance. The agreement, dated, as we have said, December 4, 1937, also contained the following stipulation:

"Act of sale to be passed on or before 30 days, before purchaser's notary and at expense of purchaser."

In his original petition Bonfield also alleges that, though he formally placed Tichenor in default on February 25, 1938, the latter failed, or refused to appear at the place and time appointed for the purpose of making the transfer.

To this petition Tichenor excepted on the ground that, though the contract attached to the petition provided that Bonfield should accept title within 30 days of the date of the contract (December 4, 1937), the petition did not allege that, within that period, Bonfield had notified Tichenor of his readiness to complete the transaction, and did not allege that, within that period, he had placed Tichenor in default. This exception was maintained, but Bonfield was given 5 days within which to amend his petition by including such allegations. Bonfield then filed an amended petition and alleged that, since January 1, 1938, he has been at all times "ready and willing and able to carry out his part of the agreement". To this amended petition Tichenor again filed exceptions based on the contention that the amended petition failed to contain the averment that defendant had been notified of plaintiff's readiness to comply with the agreement within the time limit fixed in the contract. Again this exception was maintained, but plaintiff was again given 5 days to amend. In a second amended petition Bonfield alleged in detail that he had at all times been ready and willing to pay the balance due under the contract and to accept title to the property, but that, when his attorney attempted to examine the title, he found it necessary to secure from Tichenor certain information which Tichenor had at first failed, or refused to give, and which he had finally given after the expiration of the period fixed in the contract within which title should be transferred. Petitioner alleged that it was this failure or refusal on the part of Tichenor which had caused the delay and furthermore that Tichenor had given the information after the expiration of the period originally fixed and had thus acquiesced in an extension of the time within which title should be accepted.

As we have said, there was judgment in favor of Bonfield ordering Tichenor to transfer title to the property upon payment of the balance due, but Bonfield's claim for the damage which he had sustained as a result was rejected.

The record shows that the property had been inherited by Tichenor from his son, Rolla A. Tichenor, Jr., and that the said Tichenor, Jr., at the time of the acquisition, had been married to his first wife, Victoria DeCotte, from whom he was later divorced on June 3, 1921, after he had acquired the said property. The record further shows that the attorney who examined the title was not furnished with any evidence concerning the said divorce and, therefore, it was impossible for him to examine those proceedings in order to determine whether there had been such a divorce. The said attorney took the position that, until satisfied with the legality of those proceedings, he could not be certain that possible heirs of the said first wife might not later be interested in the property. The record further shows that Mr. Tichenor, Sr., at first refused to con-

vey any information concerning this divorce, taking the position that no such investigation into that divorce should be necessary.

We think that it was absolutely essential that the attorney determine the legality of those proceedings for the reasons given and that he was, therefore, justified in refusing to approve the title at that time.

The record further shows that Mr. Tichenor consented to convey the information necessary, but that he did not do so until after the expiration of the time limit fixed in the contract and that, as soon as the attorney obtained the information, he communicated with the officials of the court in which the said divorce had been granted and obtained all necessary information and, within a reasonable time, approved the title.

The record further shows that, in the meantime, Mr. Tichenor had decided that he would not convey the title to Bonfield and that, on January 21, 1938, he notified the real estate agency through which the sale had been negotiated "that I will not now make the sale".

The record shows also that, in answer to this communication, Mr. Tichenor was notified of Mr. Bonfield's determination to force him to make title to the property and that, shortly thereafter, Mr. Tichenor was notified of the time and place at which the act of sale would be executed. In these circumstances he was not within his legal right in refusing to make title. The original delay resulted solely from his failure or refusal to give essential information which was not otherwise available. Surely a prospective vendor may not refuse to convey necessary information and thus delay the prospective purchaser and then take the position that, because of such delay, the said prospective purchaser has lost his rights under the contract. Blakesley v. Ransonet, 159 La. 310, 105 So. 354.

Then, too, it appears that after January 4th, which was the final day fixed in the contract for the execution of the deed, Tichenor conveyed the ·information which had previously been refused. In doing so he clearly evidenced an intention not to rely upon the time limit fixed in the contract. Because of this evident consent to an extension of the time, Bonfield, even had he been originally responsible for the first delay—which he was not—could have assumed that, by Tichenor's actions, he had indicated that he did not intend to insist that the contract be completed within the time limit. In Abeles & Co. v. Robinson-Slagle Lumber Company, 6 La.App. 447, the Court of Appeal for the Second Circuit, in a syllabus written by the court, said:

"If the promissor has made default in performance, with respect to the time thereof, and the promisee subsequently permits or urges him to continue performance, or accepts performance thereafter, ·or accepts payments made in performance, or otherwise treats such contract as still in force, such breach is waived."

Thus, Bonfield could have assumed that additional time had been granted and that all he need do would be to complete his part of the transaction within a reasonable time after the receipt of the necessary information. A prospective purchaser is entitled to a reasonable time for title examination. Genella v. McClure et al., 13 Orleans App. 128. After the examination was completed Tichenor was notified of the time and place at which he should appear and he refused to do so. Thus, although it may not have been necessary in view of Tichenor's written refusal to convey title, nevertheless the record shows that he was formally placed in default.

We conclude that the judgment ordering Tichenor to transfer title to the property is correct. If Tichenor fails or refuses to do so, then the judgment itself will constitute title. Kinberger v. Drouet et al., 149 La. 986, 90 So. 367.

Plaintiff's claim for the damage sustained by him as a result of the delay apparently was misconstrued by the judge a quo as a claim for damage for the complete abrogation of the contract by its breach, for that court seems to have been of the opinion that a claim for damages is inconsistent with a demand for specific performance. But plaintiff does not treat the contract as terminated by the breach and does not sue for its resolution. On the contrary, he insists upon performance and seeks recovery for the damage which he has been caused by the delay. That he may do this was definitely settled in Manning v. Cohen, 124 La. 869, 50 So. 778, in which the Supreme Court said:

"But we do not agree with our learned Brother below that the vendee must elect between suing for specific performance and suing for damages; and that, if he

chooses the former, he cannot claim damages. Articles 1926, 2486, Rev.Civ.Code, are express to the contrary. 24 Laurent, Vente, No. 180, p. 178, says that the vendee is entitled to the damages 'in all cases; that is to say, whether he sues for the resolution of the contract or for specific performance.' And indeed, it stands to reason that, as announced by article 1930, a party who violates his contract is liable for the damages which his default has caused the other party. In the instant case, if plaintiff were to be given nothing more than the property itself, after having been kept out of it for one year and lost the rents of one year, he would not be given the full measure of his rights under the contract; and defendant, on the other hand, would be profiting that much from his own default and wrong. Plaintiff is entitled to these rents, less, however, an amount equal to legal interest for the same period on the $200, which, with the $50 actually paid, was to constitute the cash payment. Not having deposited said amount, but retained and enjoyed it, plaintiff must pay interest on it."

■ It is shown that, since the day on which Tichenor was placed in default, the property has been leased—part to one tenant and part to another—and that the rent received from both tenants has amounted to $6 per week. Under the rule established in the Manning case Bonfield is entitled to the rents, but, since more than a year has elapsed since that time, it seems probable that Tichenor may have been required to pay taxes, or other fixed charges, on the property, which charges Bonfield would have been required to pay had he been in possession of the property.

Furthermore, since Bonfield has retained possession of the balance of the purchase price, it is obvious that, if he is to be entitled to the rental value of the property, he should be charged with the value of the use of the money which he has retained. Under similar circumstances the Supreme Court, in the Manning case, supra, required the purchaser to pay legal interest on the retained part of the purchase price.

■ But some of the figures—the rent received, the possible taxes or other fixed charges paid—do not accurately appear in the record and we, therefore, feel that we should not attempt, in the present state of this record, to fix the net amount of the damage which, by the delay, Bonfield has been caused. On the other hand, if we remand the entire matter for further evidence on these items, we would still further delay the consummation of the transfer of title. By dismissing, as in case of non-suit, Bonfield's claim for this damage, we make it possible, in a new proceeding, for these various items and counter-claims to receive judicial consideration without causing a delay in the adjudication on the principal issue.

It is therefore ordered, adjudged and decreed that the judgment appealed from, insofar as it runs in favor of plaintiff, Lewis G. Bonfield, and against the defendant, Rolla A. Tichenor, Sr., ordering the latter to specifically perform the contract within 30 days upon the payment by plaintiff of the sum of $1,300 for the property, be and it is amended so as to require plaintiff to pay only the balance due under the contract, to-wit, $1,150, and that, as thus amended, the judgment in that respect be and it is affirmed.

And it is further ordered, adjudged and decreed that the judgment appealed from, insofar as it rejects plaintiff's claim for attorney's fees, be and it is affirmed.

And it is further ordered, adjudged and decreed that the judgment appealed from, insofar as it rejects plaintiff's claim for rents, be and it is annulled, avoided and reversed, and that there now be judgment dismissing plaintiff's said claim for rents as in case of non-suit.

In all other respects the judgment is affirmed; defendant to pay all costs.

Amended and affirmed.