ELLIS, Judge:
Plaintiffs Dr. and Mrs. Pierre C. Ar-quembourg contracted to buy a house and lot from defendant Victor P. Bourque. The sale was arranged through defendant L. P. Bourque, d/b/a Bourque Real Estate Agency, who is the father of Victor P. Bourque. The contract of sale provided that possession of the property was to be delivered on July 12, 1966. This suit is for damages arising out of the failure of defendants to deliver possession on that day.
Dr. Arquembourg and his wife, who were newly married, were living in a guest room on the premises of the United States Public Health Service Hospital in Carville, Louisiana, where he was employed as Chief Immunologist. They testified that *93 they needed larger quarters badly, because of the inconvenience of living in one room, and because Dr. Arquembourg needed to unpack a number of crates of books which he sorely needed in his work and which were otherwise unavailable. In addition, Mrs. Arquembourg, who was of Iranian extraction, was very apprehensive about living on the grounds of a leprosarium.
They went to the Bourque agency, and, after some negotiation, contracted to buy Victor Bourque’s house. Delivery of possession was fixed in the contract for July 12, 1966. The contract itself was signed on June 30, 1966, and the act of sale passed on the next day, July 1, 1966.
We see no point in discussing the conflicting testimony of the parties hereto. The trial judge stated at the conclusion of the trial that he believed Dr. Arquembourg to be telling the truth, and we can see no basis for finding otherwise. We will, therefore, accept as correct the plaintiffs’ testimony, on which we base the following narrative:
After the sale was passed, Dr. Arquem-bourg discovered for the first time that the occupant of the house he had bought had already paid the rent thereon for the month of July, and did not plan to move out until his new home was ready. The new house was being built for him by the defendants. Being unable to obtain possession of the house through eviction proceedings and receiving no cooperation from Mr. Bourque, Dr. Arquembourg rented another house on August 10, and moved in on August 13, 1966.
At the same time, unknown to plaintiffs, the first house was vacated by the tenant. They were informed of this fact by a third party.
This suit for damages was filed on October 24, 1966. Later, the petition was amended to request rescission of the sale as well. During the pendency of the suit, but before trial, plaintiffs rented the property for four months, receiving a total rental of $325.29, The suit was tried on March 14, 1968. On July 11, 1968, a supplemental petition was filed, alleging that plaintiffs wished to sell the property, and withdrawing that part of their prayer asking for rescission of the sale.
On the same day, judgment was rendered in favor of plaintiffs, awarding Dr. Arquembourg the following damages:
Down payment $ 900.00
Expenses of act of sale 60.60
Monthly mortgage payments from August, 1966, through March, 1968 2082.80
Inconvenience, mental anguish and disappointment 250.00
Mrs. Arquembourg was awarded $500.00 in damages, apparently for inconvenience, mental anguish and disappointment.
Defendants have appealed suspensively, and plaintiffs have answered the appeal, asking for an increase in damages.
Defendants’ first specification of error is to the effect that the judgment was wrong because plaintiffs knew when they signed the contract of sale that the house would not be available on July 12, 1966. We have already said that we accept plaintiffs’ testimony as true, and it is to the contrary. This assignment is therefore without merit.
The basic law applicable to this case is found in Civil Code, Articles 2485 and 2486, which provide as follows:
“Art. 2485. If the seller fails to make the delivery at the time agreed on between the parties, the buyer will be at liberty to demand, either a canceling of the sale, or to be put into possession, if the delay is occasioned only by the deed of the seller.”
“Art. 2486. In all cases, the seller is liable to damages, if there result any detriment to the buyer, occasioned by the non-delivery at the time agreed on.”
*94 It is clear from the record that, when this suit was filed, plaintiffs had possession of the property. The house was vacant and plaintiffs knew it. Dr. Ar-quembourg had gone there and locked it up, and was making payments on the mortgage. It follows that, at that time, they were in a position to demand rescission under Article 2483 and damages under Article 2486. The fact that plaintiffs subsequently withdrew their prayer for rescission, however, cannot deprive them of their action for damages for the late delivery of the property under the provisions of Article 2486. Manning v. Cohen, 124 La. 869, 50 So. 778 (1909).
We think that had plaintiffs ad-herred to their prayer for rescission, they would have been entitled to have the sale set aside, and to get back all they paid in connection with the acquisition of the property. However, having abandoned this position in order to sell the property, they can no longer claim these amounts as an item of damages, since they have received the benefit of them in acquiring the property.
In Franton v. Rusca, 187 La. 578, 175 So. 66 (1937), the court approved an award of damages for non-delivery of the possession of property which included the value of the loss of use of the land, as well as loss of time and expenses in connection therewith.
In this case, this would include the rental value of the property from July 12, 1966, until plaintiffs obtained possession of it. We are not informed as to this date. We know that the house was vacant as of August 10, 1966, but that plaintiffs were not informed of this until August 13, 1966, when they moved into the rental house. The rental being charged for the first house was $2.88 per day, and we think that an award of 35 days rent, or $100.80, will do substantial justice between the parties.
It is clear the plaintiffs suffered considerable inconvenience as a result of the failure of defendants to make timely delivery of the possession of the property. They were forced to spend an extra month living in the guest room at the hospital, to the detriment of Dr. Arquembourg’s work and Mrs. Arquembourg’s nerves. They were forced to rent another house, and to pay rent thereon at the same time they were making the mortgage payments on the subject property.
Defendants object vigorously to the award made by the trial court for inconvenience, mental anguish and disappointment, relying on the case of Derbonne v. Burton, 189 So. 473 (La.App. 1 Cir.1939).
In that case, we held that the proper measure for damages was the value of the loss of use of the land, and that damages for mental anguish were too remote to be allowed. Since that decision was rendered, this court, in Melson v. Woodruff, 23 So. 2d 364 (La.App. 1 Cir.1945), allowed damages for inconvenience and disappointment resulting from non-delivery of an immovable, basing liability on Article 1934 of the Civil Code, which provides as follows:
“Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
“1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed.to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.
“2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have *95 been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this.
“3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gairt of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contact has been broken by the fault, negligence, fraud or bad faith of the debtor.
“4. If the creditor be guilty of any bad faith, which retards or prevents the execution of the contract, or if, at the time of making it, he knew of any facts that must prevent or delay its performance, and concealed them from the debtor, he is not entitled to damages.
“5. Where the parties, by their contract, have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement.”
Since there is no specific provision for the measure of damages in Title VII of the Code, we think that Article 1934 should be applied in determining what is due under Article 2486. Articles 2438 and 2516 of the Civil Code so provide.
In view of the legal bad faith of the defendants, arising out of their knowledge that the July rent had been paid, and the breach of the contract resulting from their inability to deliver possession for that reason, we find that plaintiffs are entitled to damages for inconvenience, disappointment and mental anguish. We find that the awards made for damages by the district judge are well within the bounds of the discretion afforded him in such matters.
In the light of the foregoing, we hold that the award in favor of Dr. Arquembourg must be reduced from the sum of $2,898.11 to $350.80. The judgment is therefore amended in that respect only, and as amended it is affirmed, at defendants’ cost.
Amended and affirmed.